IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY LAMBERT,

        Plaintiff,                    No. CIV S-05-1049 KJM

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.               <u>ORDER</u>

        /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

        In a decision dated September 23, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of degenerative disk disease of the lumbar spine and residuals status post diskectomy and fusion as well as an anxiety-related disorder and substance abuse disorder in remission, but none of these impairments meet or medically equal a listed impairment; plaintiff and his mother are not fully credible; plaintiff has the residual functional capacity to perform sedentary work with occasional postural activities and limited to unskilled work; and using the Medical-Vocational guidelines as

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

        Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
        Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
        Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
        Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
        Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

a framework for decision making, plaintiff is not disabled. Administrative Transcript ("AT") 24-25. Plaintiff contends the ALJ improperly assessed his credibility and that of his mother, did not accord proper weight to the opinions of a treating and examining physician, improperly assessed his residual functional capacity, and improperly relied on the Medical-Vocational guidelines in finding plaintiff is not disabled.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

III.  Analysis

    A.  Credibility

        Plaintiff contends the ALJ improperly discredited both his own testimony as well as that of his mother.  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,

1   177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering,
2   the Commissioner's reasons for rejecting the claimant's testimony must be clear and
3   convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.
4   1999).

5          "[L]ay witness testimony as to a claimant's symptoms or how an impairment
6   affects ability to work is competent evidence, and therefore cannot be disregarded without
7   comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala,
8   12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a
9   plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ
10  wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to
11  each witness." Dodrill, 12 F.3d at 919.

12         In this case, the ALJ accurately summarized both plaintiff's and his mother's
13  testimony.  AT 17-18, 251-277.  The ALJ also acknowledged that if the testimony of plaintiff
14  and his mother were fully credited, plaintiff would have to be found disabled.  AT 19.  The ALJ
15  then found the testimony to be not fully credible because the degree of pain, fatigue and side
16  effects were not supported by the objective medical evidence.  Id.  In discrediting plaintiff and
17  his mother, the ALJ set forth in detail the objective medical evidence that failed to support
18  plaintiff's subjective complaints.  AT 20-23.  With respect to plaintiff's mental complaints, the
19  ALJ noted there was no evidence of thought disorder when examined by a licensed clinical social
20  worker when plaintiff was paroled in June 2001 and no evidence of psychiatric treatment
21  following parole.  AT 20, 112.  The ALJ also considered the clinical findings of the consultative
22  mental status examination, which showed only mild abnormalities, and the opinions of the state
23  agency physicians who assessed only mild limitations.  AT 19, 20, 159-160, 188.  The ALJ also
24  considered plaintiff's lack of complaints to treating physicians regarding panic attacks or severe

anxiety. AT 21, 115, 117, 123-135, 151-154, 208-226.[2] With respect to plaintiff's subjective complaints regarding physical impairments, the ALJ factored into the credibility analysis the minimal clinical findings with straight-leg testing negative bilaterally, normal nerve conduction studies, and mild to moderate findings on the CT scan of the lumbar spine  AT 22, 121-122, 146-147.  The factors considered by the ALJ all were valid and supported by the record.  The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

B. Physicians' Opinions

Plaintiff also contends the ALJ did not accord proper weight to the opinions of examining psychiatrist Dr. Whitten and treating physician Dr. Neuschatz.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

---

[2] Although the medical reports contain references to anxiety, severe anxiety of the kind testified to by plaintiff is not supported by the record.  See AT 129-131 (report of "moderate" anxiety).

6

1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

        Dr. Whitten examined plaintiff on June 10, 2003 and opined plaintiff could understand simple instructions but would have difficulty working with others, responding to supervision and coworkers and adjusting to situational changes to routine.  AT 160-161.  He further opined plaintiff's symptoms would interrupt his work week.  AT 161.  The ALJ rejected Dr. Whitten's limitations in favor of those assessed by the state agency psychiatrists, who assessed only mild mental limitations based on an entire record review.[3]  AT 21, 174-176.  In so doing, the ALJ noted Dr. Whitten reviewed no records in rendering his opinion.  AT 20, 156.  The ALJ factored into the analysis Dr. Whitten's reliance on plaintiff's subjective complaints, which as discussed above, were properly discredited.  The ALJ also considered the inconsistency of plaintiff's report to Dr. Whitten that he had been diagnosed as bipolar while the medical records did not reflect such a diagnosis from any treating or examining physician.  AT 20, 156; <u>cf.</u> AT 137 (when questioned at inmate intake, plaintiff answered "bipolar"), 195 (plaintiff's "statement of problem" includes bipolar).  The ALJ also discounted Dr. Whitten's opinion because Dr. Whitten's own clinical findings did not support the degree of limitation assessed.  AT 21, 159-160.  The ALJ further noted the treating records did not show complaints of panic attacks or severe anxiety nor did the records support the severity of symptoms claimed by plaintiff.  AT 21, 109-113, 121-125, 129-131, 133-135, 151-154, 194-197, 208-226.  The

---

[3] A fair reading of the administrative transcript indicates state agency physician Dr. Mateus in fact reviewed records in detail because he recommended follow-up with plaintiff regarding his medications.  AT 87.

evidence cited by the ALJ, in conjunction with the opinions of the state agency psychiatrists, constitutes a sufficient basis for rejecting Dr. Whitten's opinion.

Dr. Neuschatz, plaintiff's treating physician, opined in a residual functional capacity questionnaire dated June 1, 2004 that plaintiff was severely limited in his ability to walk, could occasionally lift and carry 10 pounds and less than that amount on a frequent basis, and that although plaintiff had no significant limitations in doing repetitive reaching, handling, or fingering, he could use his hands, fingers and arms only 50 percent of the day. AT 199-203. The ALJ partially credited this opinion, noting that objective findings had shown evidence of back tenderness and decreased range of motion. AT 23. The ALJ also noted, however, that plaintiff had not complained to Dr. Neuschatz of significant difficulties in performing activities of daily living nor had he complained of difficulty with sustained sitting. AT 23, 115-125, 151-154, 208-226. The ALJ also considered the lack of evidence regarding neurological, sensory or motor deficits, that the CT scan showed only moderate degenerative disc disease, and that nerve conduction studies of the lower extremities were normal. AT 22, 121-122, 146-147. The ALJ also noted the complete lack of evidence supporting any upper extremity impairment. AT 23. Although plaintiff asserts a contrary interpretation of the medical evidence, the ALJ's analysis is consistent with the record and the reasons set forth for only partially crediting Dr. Neuschatz's opinion are specific and legitimate.

C.  Residual Functional Capacity

Plaintiff contends the ALJ did not properly consider his nonexertional impairments in assessing his residual functional capacity. Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

1   The ALJ properly considered plaintiff's nonexertional limitations and limited
2 plaintiff to sedentary work, partially crediting plaintiff's pain complaints.  AT 23.  The residual
3 functional capacity also is consistent with the partially credited opinion of Dr. Neuschatz.  With
4 respect to mental impairment, the ALJ limited plaintiff to simple repetitive work with minimal
5 social contact.  AT 19, 21, 23, 25.  There was no error in the residual functional capacity finding.
6       D.  Grids
7   Plaintiff also contends the ALJ should have taken the testimony of a vocational
8 expert rather than relying on the grids in determining plaintiff is not disabled.  The Medical-
9 Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of
10 factors the ALJ must consider in determining whether other work is available.  See generally
11 Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring).  The factors include residual
12 functional capacity, age, education, and work experience.  For each combination, the grids direct
13 a finding of either "disabled" or "not disabled."
14   There are limits on using the grids, an administrative tool to resolve individual
15 claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the
16 testimony of a vocational expert only when the grids accurately and completely describe the
17 claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see
18 also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  The ALJ may rely on the grids,
19 however, even when a claimant has combined exertional and nonexertional limitations, if
20 nonexertional limitations are not so significant as to impact the claimant's exertional
21 capabilities.[4]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

---

[4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to

9

1  Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-
2  64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant
3  limitation on exertional capabilities in order to depart from the grids).
4        In this case, the ALJ relied on the regulations, which note that over 200 unskilled
5  sedentary occupations, each representing numerous jobs in the national economy, can be
6  identified.  AT 24; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.00.  The ALJ also relied on
7  Social Security Ruling 85-15, which notes that unskilled jobs ordinarily involve dealing
8  primarily with objects, not people.  AT 24; SSR 85-15; see also 20 C.F.R. Pt. 404, Subpt. P, App.
9  2, Rule 201.00(I) (primary work functions in the bulk of unskilled work relate to working with
10 things, rather than people).  The ALJ concluded that any nonexertional limitations did not
11 significantly erode the occupational base and used the grids as a framework for decision making.
12 AT 25 (Finding no. 11); see 20 C.F.R. § 416.969a(d); see also Young v. Sullivan, 911 F.2d 180,
13 185 (9th Cir.1990) (stating that it is permissible for an ALJ to rely on the Guidelines as a
14 framework for decision making).  Under these circumstances, the ALJ properly relied on the
15 grids, which administratively notice a significant number of jobs available to plaintiff.
16 /////
17 /////
18 /////
19 /////
20 /////
21 /////
22 /////
23 /////

---

25 work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953,
26 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1    The ALJ's decision is fully supported by substantial evidence in the record and
2 based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:
3    1.  Plaintiff's motion for summary judgment or remand is denied, and
4    2.  The Commissioner's cross-motion for summary judgment is granted.
5 DATED: September 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006/lambert.ss